[Crim. No. 1220.  First Appellate District, Division One.—April 23, 1925.]

## THE PEOPLE, Respondent, v. JOHN ELDRIDGE, Appellant.

[1] CRIMINAL LAW—ROBBERY—CORPUS DELICTI — CONFESSIONS — EVIDENCE.—A conviction of robbery was sufficiently sustained where the *corpus delicti* was clearly and positively established by the testimony of the victim of the robbery, and defendant's connection with and participation in the crime was shown by his own confession and by the one made by his companion, which he also signed after stating that it was a true statement.

[2] ID.—CONFESSIONS—FACT—APPEAL.—In a prosecution for robbery, preliminary to the introduction in evidence of the written confessions of defendant and his companion, proof having been made to the effect that said confessions were freely and voluntarily made, and that the defendant and his companion were informed that said confessions if made could be used against them at the time of trial, the question, therefore, of whether said confessions were free and voluntary or were the result of inducement, coercion, intimidation, or duress exerted by police officers was one peculiarly within the province of the trial judge to decide upon the facts, and inasmuch as the conclusion reached by him has substantial support in the evidence, it will not be interfered with on appeal.

[3] ID. — CONFESSIONS — BINDING EFFECT OF UPON DEFENDANT.—In such prosecution, defendant was bound by the confessions made by his companion, whether the companion's confession with the defendant's signature attached to it be considered as a part of the latter's confession, or whether it be considered as the separate statement of the companion containing declarations not made in defendant's presence, for the reason that the companion's confession sets forth in detail the circumstances of the participation of defendant in the commission of the robbery and of his movements and operations on the night of the robbery, to the truth of which defendant agreed before he signed the confession.

---

(1) 16 C. J., p. 736, n. 50.    (2) 16 C. J., p. 926, n. 67; 17 C. J., p. 263, n. 80.    (3) 16 C. J., p. 736, n. 50.

2. Confession as voluntary notes, 18 L. R. A. (N. S.) 772; 50 L. R. A. (N. S.) 1077. See, also, 1 R. C. L. 577.

3. Admissibility against defendant of confession of codefendant, notes, 4 Ann. Cas. 918; 18 Ann. Cas. 274. See, also, 1 R. C. L. 574, 575.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Oscar Hudson for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant John Eldridge was charged jointly with Clifford Miles and Charles Davis with the crime of robbery. Davis demanded and was granted a separate trial, but the charges against him were subsequently dismissed without trial. Miles and Eldridge were tried together and Miles was convicted, but the jury disagreed as to Eldridge. Upon a second trial Eldridge was convicted, and he prosecutes this appeal from the judgment.

It appears from the record that on the night of April 2, 1924, about 11:30 o'clock, one Henry Waxman was held up by three men, on Willow Avenue, between Laguna and Octavia Streets, San Francisco, and robbed at the point of a revolver. Immediately following the robbery he telephoned to the police department from his home near by, and upon arrival of an officer gave descriptions of his assailants. About four hours later complaint of a different nature was made to the police department, by a woman, concerning the conduct of Eldridge, in response to which the officer, accompanied by said woman, proceeded to a house on Sutter Street where Eldridge roomed, and there found Davis in bed, but Eldridge apparently was not there. The officer, observing fresh footprints on the window-sill, left the room temporarily to search the rear of the premises. Upon returning he knocked at the door of the room and the door was opened by Eldridge, who was undressed, as if about to retire. The officer asked Eldridge who had been with him the night before, and Eldridge first stated that no one had been with him, but afterwards said that he and Miles had been together. Eldridge was then taken to a house on another street where Miles was found in bed. Eldridge and Miles were taken to Waxman's home, arriving there about

4 o'clock. Upon being confronted with the two defendants, Waxman immediately identified Miles, positively, as one of the robbers, but was unable to recognize Eldridge as being one of the other two. Both men were then taken to prison and later, according to the testimony of the police officer, admitted participation in the crime, implicating Davis as the third man. Subsequently the defendants were taken to the office of the detective bureau, in the same building, for the purpose of having their confessions reduced to writing and signed by them. While their statements were being prepared, Eldridge sat near a desk with Police Sergeant McLaughlin and Miles was seated about six or seven feet away at another desk beside Police Sergeant Hughes. After the statement of each defendant was prepared and signed by him, Miles signed the statement made by Eldridge and the latter, after reading Miles' statement, said it was true and likewise signed it. The confession of Miles is as follows:

"Room 7, Hall of Justice, April 3, 1924. Statement of Clifford Miles. My true name is Clifford Miles, age 26 years, 5 feet 8 inches, 127 pounds, born Galveston, Texas. On April 2, 1924, about 4 or 5 P. M., I went by 1892 Sutter street. I went up to Eldridge's room, No. 20, and saw Eldridge and Davis. They were talking about pulling a job, an unlawful job. They asked me if I wanted to work and get off in the morning with some money. They told me of some of the jobs they pulled. They asked me if I had a gun. I said yes but it's in a pawn shop. They asked me if I could get it and told me to hock my coat and get the gun. Davis said if I could not hock the coat, to take his watch and sell it. I went out to sell my coat and a Jew in a hock shop on Golden Gate offered me $2.80 and finally gave me $4 for it. I then got my gun for $3.50 at Fillmore Loan Office. I went back to their room, and the bullets in my gun would not fit his. About 9 P. M. I met Eldridge on Sutter street and Webster street. We went back to his room. We talked and went out for a walk and Davis took my gun. Around a park, or soon after we left a park near Eddy street, two men came up an alley (both white). Davis pointed the gun at them and said 'Stick up your hands.' Both did so. Eldridge and Davis then searched them. They got some money. I don't know how much. Me and Davis went down the street. Eldridge walked the two men

down the street. He then came back (Eldridge). .... Then
Davis went across the street and disappeared. Eldridge
also went across the street. I kept on till I got to Webster
street and then to Sutter street and I went to a restaurant
to eat. Before I went to eat I went up to Eldridge's room
and we split the money. I got $4.10 I think. I ate and met
a negro who sold me a pint of whisky for $1, and I went
up to Eldridge's room and drank some of the whiskey. El-
dridge and I then went up to a Miss Davis' room, 1872
Sutter street, and we drank up all the liquor we had left.
We went to the restaurant, had something to eat and back
to Mrs. Davis' room. I lit the lamp. Mrs. Davis wanted
a razor Eldridge had previously taken from her. After a
little quarrel all of us had I went home. I don't know
whether Eldridge went. I went to bed, and at 5:10 A. M.
the law came and took me out. Eldridge and Mrs. Davis
were with the law. This is the first hold-up I ever was
on. This is a true statement, made free and voluntarily,
without promise of reward or immunity, and know it will
be used against me in court. Witnesses: Richard O. Hughes,
Detective-Sergeant 689, George J. McLaughlin, Sergeant 437,
John L. Eldridge. (Signed.) Clifford Miles, 1788 Sutter
street.''

The following is the confession made by Eldridge:

''San Francisco, April 3, 1924. A statement made by
John L. Eldridge, residence 1892 Sutter street, room 20.
I want to make a truthful statement about the robbery and
burglary charges against me. The man I saw with you in
Judge Golden's Court this morning is the man that Clifford
Miles, George Davis and myself robbed last night of one
dollar and sixty cents. I did not use the gun. There was
a gun used. I don't know if it was Miles or Davis that
used it. We three colored men also robbed Raymond Foz,
I believe, after reading the police report No. 95,354. Think-
ing it over we may not have robbed Foz. If he is a Fili-
pino, the second man we robbed last night looked like a
Filipino. It may be him. Mary Davis, living on Sutter
street, about three doors from me, was out with Miles and
me. .... This statement I make free and voluntarily and
without any force or violence being used against me or any
promises being offered me. I have read this statement and
it is a true one. Signed John L. Eldridge. George J. Mc-

Laughlin, Sergeant 437. Richard O. Hughes, Detective Sergeant 689. Clifford Miles.''

In connection with Eldridge's confession it was shown that Sergeant McLaughlin, who prepared Eldridge's statement, had in fact appeared in court with Waxman, the victim of the robbery, on the morning of the day this statement was written and signed. Later and during the trial appellant repudiated his written confession, claiming that it had been signed by him under an apprehension of fear that physical violence would be inflicted upon him by the police officers if he did not sign the same. In denying participation in the robbery he claimed that he was elsewhere at the time the crime was committed. The alibi offered by him, however, was not supported by any other witness, nor by any corroborating circumstance.

[1] The principal ground urged for a reversal of the judgment is that the evidence is legally insufficient to sustain a conviction, counsel for appellant contending ''that the two matters upon which the conviction are predicated are these— first: There was a crime committed; second: Eldridge confessed to the crime, and,'' counsel for appellant say, ''we submit that these two facts alone are not sufficient to support a verdict of guilty.''

With this contention we are unable to agree. The *corpus delicti* was clearly and positively established by the testimony of the victim of the robbery, and appellant's connection with and participation in the crime was shown by his own confession and by the one made by Miles, which he also signed after stating, as before mentioned, that it was a true statement. [2] Preliminary to the introduction in evidence of said written confessions proof was made to the effect that said confessions were freely and voluntarily made, and that the defendants were informed that said confessions, if made, could be used against them at the time of trial. The question, therefore, of whether said confessions were free and voluntary or were the result of inducement, coercion, intimidation, or duress exerted by the officers was one peculiarly within the province of the trial judge to decide upon the facts, and inasmuch as the conclusion reached by him has substantial support in the evidence, it will not be interfered with on appeal (*People* v. *Grufft,* 61 Cal. App. 7 [214 Pac.

273]; *People* v. *Founts,* 61 Cal. App. 242 [214 Pac. 657]; *People* v. *Wheaton,* 64 Cal. App. 58 [220 Pac. 451]).

[3] It matters little whether Miles' confession with Eldridge's signature attached to it be considered as a part of the latter's confession, as appellant contends, or whether it be considered as the separate statement of Miles containing declarations not made in Eldridge's presence, for the reason that Miles' confession sets forth in detail the circumstances of the participation of Eldridge in the commission of the robbery and of his movements and operations on the night in question, to the truth of which Eldridge agreed before he signed the Miles confession. It would therefore appear that in either event he was bound by it, and, if believed by the jury, was legally sufficient without corroboration to justify a verdict of guilty.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.